**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL NO. 3:07CV444-H**

| | |
|---|---|
| SUSan R. WEAVER, )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　)<br>　　vs. 　　　　　　　　)<br>　　　　　　　　　　　)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>　　　　Defendant. 　　　)<br>　　　　　　　　　　　) | **MEMORANDUM AND ORDER**<br>**OF REMAND** |

**THIS MATTER** is before the Court on the Plaintiff's "Motion for Summary Judgment" and "Brief Supporting ... " (both document #10) filed March 5, 2008; and the Defendant's "Motion For Summary Judgment" (document #11) and "Memorandum in Support of the Commissioner's Decision" (document # 12), both filed April 25, 2008. On May 6, 2008, the Plaintiff filed a brief in response to the Commissioner's Memorandum in Support, which she styled a "Reply ..." (document #13). On June 6, 2008 and July 16, 2008, respectively, and with leave of Court, the Defendant and Plaintiff filed their "Sur-repl[ies] ... " (documents ##16 and 19). Although the briefing schedule in Social Security benefits appeals allows the Commissioner to have the last word, the Defendant has chosen not to file an additional brief.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned finds that the Defendant's decision to deny Plaintiff Social Security disability benefits is not supported by substantial evidence. Accordingly, the undersigned will grant Plaintiff's

Motion for Summary Judgment; deny Defendant's Motion for Summary Judgment; reverse the Commissioner's decision, and remand this matter for further proceeding consistent with this Memorandum and Order.

## I. PROCEDURAL HISTORY

On June 26, 2003, Plaintiff applied for a period of disability, Social Security disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"), alleging she became disabled on January 22, 2003, due to "[her] back with two surgeries, one more surgery [scheduled for] 7/7/03, deteriorating spine due to osteoarthritis." (Tr. 134). The Plaintiff's claim was denied initially and on reconsideration.

The Plaintiff requested a hearing, which was held May 18, 2006. On June 21, 2006, the ALJ issued an opinion denying the Plaintiff's claim.

Specifically, the ALJ held that the Plaintiff had not engaged in substantial gainful activity at any time relevant to this proceeding; that the Plaintiff suffered "status-post cervical surgery and depression," which were severe impairments within the meaning of the Regulations; but that Plaintiff's impairment or combination of impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (a.k.a. "the Listings"); that the Plaintiff's "bladder problems," lower back pain, and left foot swelling were not severe impairments; that the Plaintiff had the residual functional capacity to perform unskilled light work"[1] with a

---

[1]"Light" work is defined in 20 C.F.R. § 404.1567(b) as follows:
  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary

sit/stand option, limited to less than constant use of her upper extremities and requiring no contact with the public; that the Plaintiff was not able to perform any of her past relevant work; that the Plaintiff was a "younger" individual with a limited education; and that, based upon the testimony of a Vocational Expert ("VE"), there were a significant number of jobs available in the national economy that the Plaintiff could perform.

On November 8, 2006, the Plaintiff filed a Request for Review of Hearing Decision. The Appeals Council denied her request for review on August 24, 2007, making the hearing decision the final decision of the Commissioner.

The Plaintiff filed this action on October 10, 2007, and the parties' cross-motions for summary judgment are now ripe for the Court's consideration.

## II. FACTUAL BACKGROUND

Although the ALJ did consider evidence in the record related to the noted conditions, which he ultimately found to be non-disabling, he failed to consider record evidence that the Plaintiff also suffered from other potential impairments. Specifically, on June 10, 2003, the Plaintiff's treating neurosurgeon, Raymond C. Sweet, M.D., reported, "[Plaintiff] has pain inside of both elbows today... Ulnar nerve palpation bilaterally is negative. She has a moderately positive Tinel sign on the left, negative on the right ... I will hold off on any carpal tunnel evaluation at this time until we sort the neck problems out." (Tr. 326).

On January 28, 2004, one of the Plaintiff's treating physicians, Thomas R. White, M.D., wrote, "[Plaintiff] complains chiefly of numbness in her left arm with pain. She has been previously

---

work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

diagnosed with carpal tunnel syndrome. No specific treatment was done for this, she says. She is left handed. She describes numbness that is mainly in the proximal aspect of the arm. She has difficulty holding things with her left hand, and it feels weak." (Tr. 407.) Dr. White observed, "Exam is limited to the upper extremity. Tinel sign reproduces discomfort in the posterior aspect of the arm with tingling. She has a suggestively positive compression test of the median nerve. There is no atrophy noted. Pulses are intact." Id. Dr. White diagnosed, "Carpal Tunnel syndrome, left upper extremity," and, "[p]rescribed a splint as well." Id.

On January 29, 2004, Dr. White received a telephone memo that said, "[Plaintiff] says Medicaid won't pay for wrist splint for carpal tunnel syndrome. She says you said you'd give her one from here." Dr. White wrote on the memo, "I checked and we don't have one – sorry." (Tr. 408.)

On June 2, 2004, Dr. Sweet reported, "[Plaintiff] does have positive Tinel on the left. I told her she needs to use a splint that she probably has carpal tunnel syndrome." (Tr. 368.)

Similarly, concerning the Plaintiff's mental and emotional functioning, although the ALJ briefly mentioned that the Plaintiff had been diagnosed with both depression and borderline intellectual functioning, the hearing decision does not show that he considered evidence relevant to the latter impairment. More importantly, the ALJ failed to consider the recommendation of Daniel J. Byrne, M.D., a psychiatrist who evaluated the Plaintiff consultatively and stated:

> The most significant problem is related to cognitive impairment demonstrated in the mental status examination. Given [Plaintiff's] level of education, she may have an underlying borderline intellectual functioning. Intelligence and psychological testing is strongly recommended in order to accurately assess IQ and other cognitive skills.

(Tr. 324.)

More significantly, the ALJ failed to consider, or at least failed to state what consideration he gave to, the opinions of two of the Plaintiff's treating physicians. On June 13, 2005, the

Plaintiff's treating psychiatrist, Ernest R. Chander, M.D., diagnosed Plaintiff with major recurrent depression with severe anxiety. (Tr. 471-472.) Dr. Chander opined that Plaintiff's mental impairments would significantly interfere with her work functioning on a daily basis; that she is disabled from the full range of sedentary work due to her mental impairments; and that she is credible in her complaints. Id. He reported that Plaintiff was not able to perform the following activities on a sustained basis: understanding and remembering detailed instructions; maintaining attention for extended periods of two-hour segments; maintaining regular attendance and being punctual within customary tolerances; working in coordination with or proximity to others without being unduly distracted by them; and completing normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number of lengthy rest periods. Id.

As the Plaintiff points out in her briefs, the ALJ's hearing decision does not offer any explanation of the weight afforded this opinion, nor does it offer any rationale for the ALJ's implicit decision to give Dr. Chander's opinion little or no weight.

Similarly, the ALJ failed to consider Dr. Sweet's opinions as to the Plaintiff's functional limitations. On October 22, 2003, Dr. Sweet wrote to Dr. White as follows:

> I saw [Plaintiff] in follow-up. She continues to have chronic back pain, restriction of motion of the neck. I reviewed her cervical MRI which shows post-operative changes. It looks good. No recurrent HNP. She continues with low back pain and stiffness. I explained to her that there is no more surgery to be done. Her pain is coming from the chronic degenerative arthritis and scar tissue. She will need long term medication. I feel that because of her multiple spinal surgeries she is not able to do any type of work or gainful employment. This is a permanent problem.

(Tr. 341.)

Concerning this opinion, the ALJ stated only that the determination of disability is the

ultimate issue reserved to the Commissioner and that to the extent Dr. Sweet was opining on that issue, his opinion would be disregarded.[2] However, the ALJ gave no analysis of Dr. Sweet's opinions that the Plaintiff had a permanent problem with low back pain and stiffness that was caused by chronic degenerative arthritis and scar tissue, which could not be corrected surgically and which would require long term medication.

Almost four months later, on February 9, 2004, Dr. Sweet completed a separate statement in which he offered a more detailed opinion. Dr. Sweet diagnosed Plaintiff as being "[p]ost laminectomy, cervical region" and opined that Plaintiff's impairments would prevent her from standing for more than 4 hours in an 8 hour day; that she could walk continuously no more than 200 feet without having to rest; that she could sit continuously no more than 2 hours; that her pain is moderate to severe and chronic; that her pain would affect her memory and/or concentration; that she would need to lie down and rest at unplanned intervals during the day due to her impairments; and that she is credible in her complaints. (Tr. 359.) Again, as with Dr. Chander's opinion, the ALJ failed to state what weight he gave to Dr. Sweet's second opinion and did not offer any rationale for ignoring functional restrictions that if found credible and controlling would prohibit sedentary, much less light, work. The ALJ gave only slightly more detailed treatment to the opinions of treating psychologist Diane C. Johnson, Psy.D., who on February 10, 2004 completed an "Assessment of Mental Residual Functional Capacity." (Tr. 360-361.) Dr. Johnson diagnosed "major depression/general anxiety disorder/panic disorder." Id. Dr. Johnson reported that Plaintiff has extreme limitations in her ability to understand and remember either very short and simple or detailed

---

[2] For present purposes, the Plaintiff concedes that to the extent Dr. Sweet's letter amounted to a summary statement that the Plaintiff is disabled, the ALJ properly disregarded it.

instructions; to carry out either very short and simple or detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to make simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and respond appropriately to criticism from supervisors; to respond appropriately to changes in the work setting; and to travel in unfamiliar places or use public transportation. Dr. Johnson also reported that Plaintiff has marked limitations in her ability to remember locations and work-like procedures; to interact appropriately with the general public; to ask simple questions or request assistance; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to be aware of normal hazards and take appropriate precautions; and to set realistic goals or make plans independently of others.

Also on October 10, 2004, Dr. Johnson completed an "Evaluation of Disability Based on Affective Disorders." (Tr. 362.) Dr. Johnson reported clinical findings that Plaintiff suffers medically-documented persistence, either continuous or intermittent, of depressive syndrome characterized by sleep disturbance, feelings of guilt or worthlessness, and difficulty concentrating or thinking; and of manic syndrome characterized by pressure of speech, flight of ideas, easy distractibility, and involvement in activities that have a high probability of painful consequences which are not recognized. Dr. Johnson assessed functional restrictions resulting in marked restriction of activities of daily living, maintaining social functioning, and maintaining concentration,

7

persistence or pace. Dr. Johnson reported a medically documented history of a chronic affective disorder of at least two years duration that has caused more than a minimal limitation of ability to engage in basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support; and a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; and a current history of 1 or more year's inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Finally, on October 10, 2004, Dr. Johnson completed an "Evaluation of Disability Based on Anxiety Related Disorders." (Tr 363.) Dr. Johnson reported her clinical findings of generalized persistent anxiety accompanied by motor tension; a persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; and recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. Dr. Johnson assessed functional restrictions resulting in marked restriction of activities of daily living maintaining social functioning, and maintaining concentration, persistence or pace; and repeated episodes of decompensation, each of extended duration.

Faced with Dr. Johnson's detailed findings of mental and emotional impairments that resulted in a broad scope of severe functional limitations, the ALJ stated only: "[t]he undersigned has considered the opinion of Dr. Johnson, a psychologist, that the claimant had marked to extreme functional limitations regarding her major depression. However, Dr. Johnson's own notes, as well

as other evidence in the record, do not support these severe limitations. Thus, the undersigned Administrative Law Judge accords little weight to Dr. Johnson's opinion." (Tr. 34.) In other words, although Dr. Johnson's notes are replete with clinical findings, as noted above, supporting her opinions, the ALJ did not identify what other findings in Dr. Johnson's notes contradicted her opinions, nor did the ALJ specify what "other evidence in the record" warranted giving Dr. Johnson's opinions "little weight."

### III. STANDARD OF REVIEW

The question before the ALJ was therefore whether at any time the Plaintiff became "disabled" as that term of art is defined for Social Security purposes.[3] The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if

---

[3] Under the Social Security Act, 42 U.S.C. §301, et seq., the term "disability" is defined as an:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

9

supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

The Fourth Circuit has long emphasized that it is not for a reviewing court to re-weigh the evidence, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIM

The Commissioner's own regulations clearly require an ALJ to evaluate thoroughly every medical opinion in the record. 20 C.F.R. § 404.1527(d). In so doing, the ALJ must explicitly consider a list of factors. Id. The Fourth Circuit concurs in this requirement, holding that "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005), citing 20 C.F.R. § 404.1527.

Moreover, if a treating physician's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The Commissioner has promulgated a four-pronged test to establish whether a medical opinion from a treating source must be given controlling weight. First, the opinion must come from a "treating source," as defined in 20 C.F.R. §§ 404.1502 and 416.902; second, it must be a "medical opinion" as defined in 20 C.F.R. §§ 404.1527(a) and 416.927(a); third, the opinion must be "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques; and fourth, the opinion must be "not inconsistent" with the other "substantial evidence" in the individual's case record. SSR 96-2p. Accord Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (applying 20 C.F.R. § 404 and SSR 96-2p); and Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (same). It is well settled, of course, that if a treating physician's opinion is "not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less [than controlling] weight." Mastro, 270 F.3d. at 178, citing Craig, 76 F.3d at 590.

Unless a treating source's opinion is given controlling weight, that is, unless it is adopted by the ALJ, the ALJ must explain in the decision what lesser weight, if any, the opinion was given. 20 C.F.R. § 404.1527(f)(2)(ii). An ALJ must also explain in the notice of decision the rationale for the reduced weight given to treating sources' opinions. 20 C.F.R. § 404.1527(d)(2). In other words, the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion(s), which are supported by evidence in the record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to

the treating source's medical opinion(s) and the reasons for that weight. SSR 96-2p.

Applying these legal principles to the record in this case, clearly this matter must be remanded for a new hearing. While recognizing that after the second hearing, including consideration of both existing evidence plus any new evidence that may have been developed in the interim, the ALJ might be able to issue a well-reasoned decision establishing that substantial evidence supports the determination that the Plaintiff was not disabled, at this point in the proceedings, the ALJ has not complied with the Commissioner's regulations or Fourth Circuit authority governing the consideration of the medical record, specifically, the opinions of treating professionals. See 20 C.F.R. § 404.1527; SSR 96-2p; Johnson, 434 F.3d at 654; Mastro, 270 F.3d at 178; and Craig, 76 F.3d at 590. Indeed, rather than stating what lesser weight he was giving to Dr. Sweet and Dr. Chander's opinions, or giving any rationale for those conclusions, the ALJ simply ignored them. The ALJ's failure to address these treating physicians' opinions is particularly problematic since, as discussed above, if they were given controlling weight, a finding that the Plaintiff is disabled would likely be the result.

As the Defendant points out in his briefs, the ALJ did include a short synopsis of his conclusion that Dr. Johnson's opinions were entitled to little weight. In light of the detailed findings Dr. Johnson made as to the scope and severity of the Plaintiff's mental and emotional impairments, however – which also would likely result in a finding of disability if afforded controlling weight – the ALJ's otherwise unsupported statement that "Dr. Johnson's own notes, as well as other evidence in the record, do not support these severe limitations" is clearly insufficient.

In short, after conducting another hearing, the ALJ should issue a decision that complies with the Commissioner's regulations and the noted case law, which includes "specific reasons for the weight

the treating source's medical opinion(s) and the reasons for that weight. SSR 96-2p.

Applying these legal principles to the record in this case, clearly this matter must be remanded for a new hearing. While recognizing that after the second hearing, including consideration of both existing evidence plus any new evidence that may have been developed in the interim, the ALJ might be able to issue a well-reasoned decision establishing that substantial evidence supports the determination that the Plaintiff was not disabled, at this point in the proceedings, the ALJ has not complied with the Commissioner's regulations or Fourth Circuit authority governing the consideration of the medical record, specifically, the opinions of treating professionals. See 20 C.F.R. § 404.1527; SSR 96-2p; Johnson, 434 F.3d at 654; Mastro, 270 F.3d at 178; and Craig, 76 F.3d at 590. Indeed, rather than stating what lesser weight he was giving to Dr. Sweet and Dr. Chander's opinions, or giving any rationale for those conclusions, the ALJ simply ignored them. The ALJ's failure to address these treating physicians' opinions is particularly problematic since, as discussed above, if they were given controlling weight, a finding that the Plaintiff is disabled would likely be the result.

As the Defendant points out in his briefs, the ALJ did include a short synopsis of his conclusion that Dr. Johnson's opinions were entitled to little weight. In light of the detailed findings Dr. Johnson made as to the scope and severity of the Plaintiff's mental and emotional impairments, however – which also would likely result in a finding of disability if afforded controlling weight – the ALJ's otherwise unsupported statement that "Dr. Johnson's own notes, as well as other evidence in the record, do not support these severe limitations" is clearly insufficient.

In short, after conducting another hearing, the ALJ should issue a decision that complies with the Commissioner's regulations and the noted case law, which includes "specific reasons for the weight

given to the treating source's medical opinion[s], supported by the evidence in the case record ... sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. Accord 20 C.F.R. § 404.1527; Johnson, 434 F.3d at 654; Mastro, 270 F.3d at 178; and Craig, 76 F.3d at 590.

## V. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. "Plaintiff's Motion For Summary Judgment" (document #10) is **GRANTED;** Defendant's "Motion for Summary Judgment" (document #11) is **DENIED**; and the Commissioner's decision is **REVERSED.** This matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[4]

2. The Clerk is directed to send copies of this Memorandum and Order of Remand to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED.**

Signed: August 21, 2008

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge

---

[4] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision ... with or without remanding the cause for a rehearing." Sullivan v. Finkelstein, 496 U.S. 617, 625 (1990).